62874. LEWIS et al. v. SCHLENZ et al.

CARLEY, Judge.

Plaintiff-appellants own a home located in DeKalb County, Georgia. DeKalb County is one of the defendant-appellees in this case. Defendant-appellees Schlenz and Fraser own, respectively, the property on either side of appellants' property. A stream runs

through the three parcels of property. Appellants filed a three-count complaint against the appellees. Count I alleged that appellees Schlenz and Fraser maintained, on their respective lots, certain culverts which obstructed the natural flow of the stream during heavy rains and caused flooding on appellants' property. Count I further alleged that the culverts constituted a continuing trespass and a continuing nuisance which appellants sought to enjoin and for which appellants sought the following damages: $72,000 for loss of rental value of their property; $12,400 for property damage during a flood on April 13, 1979; $110,000 property damage during a flood on August 31, 1979; and, general damages of $225,000. Count II of the complaint alleged that appellee-DeKalb County had created and maintained a nuisance by issuing the building permits for the culverts and by refusing to remove the culverts or to enforce the applicable drainage ordinances. Count II further alleged that the nuisance was a continuing one which appellants sought to have enjoined and for which appellants sought against DeKalb County $365,400 in total damages and attorney fees. Count III of the complaint stated an inverse condemnation claim against DeKalb County and is not a subject of relevant inquiry in the instant appeal.

The appellees answered the complaint and the case proceeded to the discovery stage. It was established that in 1975 the appellants had brought suit against the builder who had constructed, on either side of appellants' property, the houses now owned by appellees Schlenz and Fraser. In the 1975 action, the appellants had alleged that the builder had negligently and improperly constructed the "bridges and culverts" giving access to the two houses adjoining appellants', resulting in the obstruction of the flow of the stream and causing flooding of appellants' property. It was further alleged in the 1975 suit that appellants had "sustained a reduction in the fair market value of their residence of approximately $25,000.00, that being the difference in its value before and after the condition was created which caused the flooding" and "more than $5,000.00 to date in actual cost and expense to repair the damage done." It was further established that the 1975 litigation terminated when the appellants executed a "General Release" whereby they made "a full and final compromise, adjustment and settlement of any claims they may have individually or as husband and wife. . . ." The text of the " General Release" contained the following: the appellants "have remised, released and forever discharged, and by these presents do for [their] heirs, executors and administrators, remise, release and forever discharge the said CHARLES F. JAMES, Individually and dba D. J. CONSTRUCTION COMPANY, their successors and assigns, of and from all, and all manner of action and actions, causes and causes of

action, suits, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which against CHARLES F. JAMES, Individually or dba D. J. CONSTRUCTION COMPANY we ever had resulting from the ownership of [our] property, hereafter can, shall or may have, upon or by reason of any matter cause or thing whatsoever from the beginning of the world to the day of the date of these presents, particularly, but not limited to, any and all claims and demands set out in the complaint or which could have been set out in the complaint filed by Mr. & Mrs. J. Keith Lewis vs. Charles F. James, individually and Charles F. James doing business as D. J. Construction Company and R. J. Construction Company, . . ."

Based upon the "General Release" executed by the appellants in connection with the 1975 litigation, appellees Schlenz and Fraser moved for summary judgment in the instant action. Appellee-DeKalb County made an oral motion to dismiss as to count II of the complaint at the hearing on the other appellees' motion for summary judgment. The motions for summary judgment and to dismiss were granted. It is from these orders that appellants bring this appeal.

1. Appellants apparently concede that appellees Schlenz and Fraser are entitled to claim the benefit of the 1975 "General Release" either as the successors or assigns of the builder of the culverts or as the builder's joint tortfeasors, arguing only that the release was effective as to claims arising from the alleged nuisance occurring *prior* to the execution of the release but that it "does not bar the claims which the [appellants] are making in the present action" for damages arising *after* its execution. Thus, the issue presented for resolution is a determination of the legal effect and scope of the 1975 "General Release."

"A former recovery . . . in a suit for damages sustained by a property-owner by reason of [the] maintenance of a nuisance is no bar to a second action brought by him with a view to recovering compensation for damages subsequently arising from the same cause, *unless the recovery had in the first suit was for prospective damages as well as for such as had actually been suffered up to the time of the bringing thereof.*" *Mulligan v. City Council of Augusta,* 115 Ga. 337 (41 SE 604) (1902). Applying this rationale to the 1975 litigation demonstrates that the appellants "elected" to consider the culverts and bridges then existing on the adjoining properties as permanent continuing nuisances. See *Cox v. Cambridge Square Towne Houses, Inc.,* 239 Ga. 127 (236 SE2d 73) (1977). This is demonstrated not only by the fact that no demand for abatement was made, but, more importantly, by the fact that in addition to the $5,000 in damages actually suffered in the flood to date the appellants also prayed for

prospective damages in the form of diminished fair market value before and after the condition was created which caused the flooding. See *Hancock v. Moriarity,* 215 Ga. 274, 276 (2) (110 SE2d 403) (1959). In the general release which terminated the 1975 litigation, the appellants released, for the sum of $7,200, "all manner of action and actions, causes and causes of action, suits, damages, . . . we ever had resulting from the ownership of said property, hereafter can, shall or may have, *upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents, particularly, but, not limited to, any and all claims and demands set out in the complaint* or which could have been set out in the complaint . . ." (Emphasis supplied.) Thus, construing the release in pari materia with the complaint, it appears that it evidences a "recovery" of prospective damages to appellants' property "upon or by reason of" the culverts and bridges then existing on the adjoining properties. See generally *Kapiloff v. Askin Stores,* 202 Ga. 292 (42 SE2d 724) (1947). "The settlement constituted a release of the tort-feasor, not merely as to the amount paid, but as to all liability because of the negligence complained of. [Cit.]" *Universal Credit Co. v. Service Fire Ins. Co.,* 69 Ga. App. 357, 361 (25 SE2d 526) (1943). It therefore appears that the 1975 general release was, in effect, a release "from any claim of damage arising" to appellants' property by reason of the construction and future maintenance of the then existing culverts and bridges. See generally *Wheeler v. Jones County,* 101 Ga. App 234, 236 (113 SE2d 238) (1960). It follows that, to the extent the instant action sought to recover "compensation for damages subsequently arising from the same cause," summary judgment was correctly granted. *Mulligan,* 115 Ga. 337, supra. See also Reynolds Metal Co. v. Ward, 308 F2d 504 (9th Cir. 1962) (cited with approval in *Cox,* 239 Ga. 126, supra). The record demonstrates that in 1975 the appellants sued for prospective damages arising from "the condition . . . which caused the flooding." They entered into "a full and final compromise, adjustment and settlement of any claims they may have . . .", including "but not limited to, any and all claims and demands set out in the complaint . . ." The instant suit was brought to recover damages to the property subsequently arising from the same cause, to wit: the culverts and bridges. Therefore, assuming that appellees Schlenz and Fraser are entitled to claim the benefit of the 1975 general release, summary judgment was properly granted to them. See *Clark v. Lanier,* 104 Ga. 184 (30 SE 741) (1898); *Mulligan,* 115 Ga. 337, supra. Appellants having apparently conceded that the appellees are protected by the general release to the full extent of its ambit and having argued only that the instant action does not come within that ambit, we conclude that it was not error to

grant summary judgment to Schlenz and Fraser. See *Riker v. McKneely,* 153 Ga. App. 773 (266 SE2d 553) (1980).

2. At the hearing on the other appellees' motion for summary judgment as to Count I of appellants' complaint appellee-DeKalb County orally moved to dismiss as to Count II in the event that the summary judgment motion was granted by the trial court. Without setting another hearing or otherwise giving appellants 30 days within which to respond to the oral motion to dismiss, the trial court granted DeKalb County's motion by order entered on the same day as the entry of the order granting summary judgment to appellees Schlenz and Fraser. This was error. It could not be said that DeKalb County was entitled, as a matter of law, to the grant of a motion to dismiss because it was a joint tortfeasor or for any other reason (see *Duffield v. DeKalb County,* 242 Ga. 432, 434-435 (249 SE2d 235) (1978)) *on the basis of the pleadings alone.* It is apparent that, in ruling that DeKalb County was a joint tortfeasor in the instant case, the trial court considered, at a minimum, the 1975 general release insofar as it might relate to the allegations contained in Count II of the complaint, allegations which differed from those set forth in Count I. See *Hoffman v. PMC Development Co.,* 238 Ga. 258 (232 SE2d 541) (1977). Under these circumstances the appellants were entitled to 30 days notice after DeKalb County's oral "motion to dismiss" was made to present evidence demonstrating that DeKalb County was not released from liability predicated upon the nuisance claim alleged in Count II. See *Davis v. American Acceptance Corp.,* 119 Ga. App. 265 (167 SE2d 222) (1969). Contrary to DeKalb County's assertions, the record does not support a finding that appellants waived this right to 30 days notice after being offered it by the trial court. *Davis,* 119 Ga. App. 265, supra. Accordingly the grant of DeKalb County's oral motion to dismiss Count II of the appellants' complaint must be reversed.

*Summary judgment in favor of appellees Schlenz and Fraser affirmed. Grant of motion to dismiss as to DeKalb County reversed. Deen, P. J., and Banke, J., concur.*

DECIDED JANUARY 21, 1982 —
REHEARING DENIED FEBRUARY 10, 1982 —

*William Boyd Lyons,* for appellants.
*L. Jack Swertfeger, Jack H. Thrasher, W. Wray Eckl, Drake E. Chandler, James H. Weeks,* for appellees.